# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re Application of<br><br>HCS Beteiligungsgesellschaft mbH,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 22- |

## MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

John P. Lewis
HAYWARD PLLC
10501 N. Central Expy, Suite 106
Dallas, Texas 75231
Telephone: (972) 755-7100
JPLewis@haywardfirm.com

Duane L. Loft*
Brianna Hills Simopoulos*
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com

*Pro hac vice application forthcoming

Counsel for Petitioner

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND .................................................................................................3

    A.    HCS and Its Investment in Innoplexus ................................................... 3

    B.    Dr. Bhardwaj and Partex Takeover Control of Innoplexus to the Exclusion of HCS........................................................................................................... 4

    C.    Dr. Bhardwaj and Partex Strip the Assets and Business Opportunities of Innoplexus for the Benefit of Dr. Bhardwaj and Mr. Fernandez and to the Detriment of HCS. ................................................................................... 5

    D.    HCS Takes Steps in Preparation for a Lawsuit Against At Least Dr. Bhardwaj and Partex. ................................................................................. 6

    E.    Respondent and The Requested Discovery........................................... 7

ARGUMENT ........................................................................................................................8

I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. 1782.............. 9

    A.    Respondent "Resides" or Is "Found in" this District............................... 9

    B.    The Discovery Sought Is "For Use" In a Foreign Proceeding.............................. 9

    C.    Petitioner is an "Interested Person." ................................................... 10

II.    The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery. ...................... 11

    A.    Respondent Is a Non-Participant in the German Proceedings............................ 11

    B.    The German Court Will Be Receptive to the Evidence Sought.......................... 12

    C.    The Application Does Not Circumvent Foreign Proof-Gathering Restrictions.... 13

    D.    The Subpoena Is Not Unduly Burdensome. ....................................... 15

CONCLUSION.....................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
  747 F.3d 1262 (11th Cir. 2014) ...................................................................................10

*Banca Pueyo, S.A. v. Lone Star Fund IX (U.S.), L.P.*,
  No. 3:18-MC-100-M, 2019 WL 12375546 (N.D. Tex. Nov. 29, 2019)....................... 10-11, 15

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*,
  613 F. App'x 319 (5th Cir. 2015) ...........................................................2, 8, 9, 10-11

*Ecuadorian Plaintiffs v. Chevron Corp.*,
  619 F.3d 373 (5th Cir. 2010) ................................................................... 12-13

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) ......................................................................... 12

*In re Empresa Publica De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*,
  No. 4:19-MC-2534, 2020 WL 13412872 (S.D. Tex. Apr. 13, 2020) ........................................ 9

*In re Thales Dis Ais Deutschland GmbH*,
  No. 3:21-MC-303-S, 2021 WL 7707268 (N.D. Tex. Nov. 5, 2021) ..................... 11, 12, 13, 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)........................................................................... passim

*LEG Q LLC v. RSR Corp.*,
  No. 3:17-CV-1559-N-BN, 2017 WL 3780213 (N.D. Tex. Aug. 31, 2017) ............................... 16

*Palantir Techs., Inc. v. Abramowitz*,
  415 F. Supp. 3d 907 (N.D. Cal. 2019) ................................................................... 16

## STATUTES

28 U.S.C. § 1782............................................................................... passim

## INTRODUCTION

Petitioner HCS Beteiligungsgesellschaft mbH ("**HCS**", "**Petitioner**") respectfully submits this Application pursuant to 28 U.S.C. § 1782 to take limited discovery from Ruben King-Shaw ("**Respondent**" or "**King-Shaw**"), an individual found in this District. Petitioner seeks this evidence for use in two contemplated proceedings that it intends to file imminently in Germany in connection with Petitioner's investment in Innoplexus AG, a German pharmaceutical technology company.

In the first proceeding, Petitioner will allege that two non-parties, Dr. Gunjan Bhardwaj and Partex, breached a Shareholders' Agreement by violating the obligation to devote his entire work time and attention to Innoplexus, in which both Petitioner and Dr. Bhardwaj are shareholders and for which Dr. Bhardwaj was, until recently, CEO (the "**Partex Proceeding**"). In the second proceeding, Petitioner will allege that Dr. Bhardwaj orchestrated a takeover of Innoplexus, harming HCS, and, in the course of this takeover, Dr. Bhardwaj, together with Partex, stripped Innoplexus' assets, know-how and technology and transferred it to Partex (the "**Innoplexus Proceeding**", and together with the Partex Proceeding, the "**German Proceedings**"). Respondent is a current member of the supervisory board of Innoplexus and, prior to his election to the supervisory board, supported Dr. Bhardwaj's takeover of Innoplexus. Respondent thus has first-hand knowledge of facts critical to the German Proceedings.

Section 1782 authorizes this Court to order discovery from any person that resides or is found in this district to assist with proceedings before foreign tribunals. Petitioner's Application meets all of the statutory requirements of Section 1782: (i) Respondent "resides or is found" in this District because he lives in Dallas; (ii) the Requested Discovery is "for use" in a foreign proceeding, namely the German Proceedings; and (iii) Petitioner easily meets the standard for an

"interested person" under the statute because Petitioner will be the plaintiff in the German Proceedings.

Although Petitioner has not yet initiated the German Proceedings, the Fifth Circuit has explained that "the statute only requires the foreign proceeding to be in 'reasonable contemplation.'" *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 322 (5th Cir. 2015). As described by Petitioner's German counsel, Dr. Olaf Gierke, Petitioner has already taken concrete steps in preparation for filing the German Proceedings, which Petitioner intends to file within January 2023 in the regional court of Frankfurt am Main, Germany. Declaration of Dr. Olaf Gierke ("**Gierke Decl.**").

In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weighs decisively in favor of granting Petitioner's Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, Petitioner seeks discovery from a "nonparticipant" in the foreign action. *Id.* As explained in the accompanying declaration of Dr. Olaf Gierke, German legal counsel to Petitioner, Petitioner does not, at this time, intend to name Mr. King-Shaw as a defendant in the German Proceedings.

*Second*, there is no indication, let alone the required "authoritative proof," suggesting that the German court might be unreceptive to Section 1782 assistance. *Id.* To the contrary, dozens of courts across the country have held that German courts are receptive to discovery obtained pursuant to Section 1782.

*Third*, the Application is not concealing any improper attempt to circumvent any foreign discovery restrictions on proof gathering. *Intel*, 542 U.S. at 264.

*Fourth*, the proposed discovery is not unduly burdensome. *Id.* Instead, the subpoena is narrowly tailored to seek information directly relevant to the critical issues in the German Proceedings, namely, (a) documents and communications exchanged between Respondent, Partex and Dr. Bhardwaj related to the takeover of Innoplexus by Dr. Bhardwaj and his company, Partex, (b) documents and communications exchanged between Respondent and Dr. Bhardwaj or other individuals associated with Partex and Dr. Bhardwaj or their agents and advisors related to the misappropriation of assets and business opportunities from Innoplexus and its shareholders to the detriment of Innoplexus and HCS. The subpoena is limited to such documents and communications within the possession, custody, and control of Respondent, and is temporally limited to the period of time in which Respondent was acting

*Finally*, the Court should exercise its discretion to order production of any responsive discovery that Respondent has in his possession, custody, or control, regardless of the physical location of that evidence.

## FACTUAL BACKGROUND

### A.    HCS and Its Investment in Innoplexus

HCS is a venture capital firm based in Frankfurt, Germany that focuses on investments in technology companies in Europe and the Middle East. Gierke Decl. ¶ 4. From 2016 on, HCS invested in Innoplexus AG ("**Innoplexus**"), a German pharmaceutical technology company that uses artificial intelligence and blockchain technology to facilitate the drug development process. *Id.* ¶ 5. Innoplexus was founded by Dr. Gunjan Bhardwaj in 2016, who has, since then and until October 2022, been its Chief Executive Officer. *Id.* As part of HCS's investment in Innoplexus, both HCS and Dr. Bhardwaj signed a shareholders' agreement. *Id.* Among other things, the Shareholders' Agreement stated that Dr. Bhardwaj would devote his entire work time and attention to Innoplexus and would not engage in activities that would impair that obligation. *Id.*

Subsequent to HCS' investment in Innoplexus, Dr. Bhardwaj formed Partex NV ("**Partex**") in 2017 as his personal holding company for the sole purpose of holding his shares in Innoplexus. *Id.* ¶ 6.

### B.    Dr. Bhardwaj and Partex Takeover Control of Innoplexus to the Exclusion of HCS.

As a startup company, Innoplexus needed continuous additional funding, and in 2019 it started preparing for a Series D financing with a pre-money valuation of EUR 175 million, approx. USD 176 million.  Gierke Decl. ¶ 7.  As part of those efforts, while purporting to be soliciting new investment in Innoplexus, Dr. Bhardwaj co-opted new investors to instead provide capital to Partex.  *Id.* ¶ 8.  In early 2021, a former member of Innoplexus's supervisory board made Innoplexus aware of a contact, Francisco Fernandez, a Swiss investor, who was interested in investing in Innoplexus, specifically its involvement in the blockchain technology space.  *Id.* ¶ 9. The former supervisory board member arranged a virtual meeting between himself, Mr. Fernandez, and Dr. Bhardwaj for purposes of soliciting Mr. Fernandez's investment in Innoplexus.  *Id.*  During the meeting, they discussed an investment opportunity in Innoplexus, and Mr. Fernandez showed a strong interest in participating in funding a Series D financing round for Innoplexus.  *Id.* ¶ 11.

Although Mr. Fernandez was supposed to be investing in Innoplexus, the day after the virtual meeting, Dr. Bhardwaj emailed Mr. Fernandez, and instead of soliciting investment in Innoplexus, Dr. Bhardwaj solicited investment for Partex, his personal holding company.  *Id.* ¶ 12. Dr. Bhardwaj emailed Mr. Fernandez saying, "It would be a **real pleasure if you participate in Partex**."  *Id.* ¶ 12 (emphasis in original).  Dr. Bhardwaj stated: "We have a **short term opportunity** to '**buy**' out an Innoplexus shareholder in **addition** at a discount for 15-20 M EUR (having **26%** currently).  This can get **Partex control** in Innoplexus (base technology) to **over 60%**."  *Id.* ¶ 13 (emphasis in original).

4

Attached to that email was a pitch presentation for Partex. In it, Dr. Bhardwaj lays out his plan on how to exploit Innoplexus' assets and technology using Partex subsidiaries that were not in existence at this point in time. Dr. Bhardwaj had apparently already secured the support of Respondent, who became member of the supervisory board in March 2021, as he is presented as team member in the presentation.

Mr. Fernandez decided to invest more than 40 million Euro into Partex. With that influx of capital, Partex increased its shareholding in Innoplexus through a forced capital increase to the exclusion of other shareholders, including HCS. This transaction and a subsequent purchase of shares held by ATAI had the effect of increasing Partex's shareholding in Innoplexus to 73.27%, making Partex the majority owner of Innoplexus. Partex calls Mr. Fernandez its "Chairman & Co-Founder" and Dr. Bhardwaj its "CEO & Co-Founder."

C.    **Dr. Bhardwaj and Partex Strip the Assets and Business Opportunities of Innoplexus for the Benefit of Dr. Bhardwaj and Mr. Fernandez and to the Detriment of HCS.**

Since the takeover and completion of various asset stripping transactions, rather than acting as its own business, Innoplexus acts as mere service provider to Partex. Innoplexus now refers to itself as "part of Partex" and "part of Partex family." Gierke Decl. ¶ 19. Partex refers to Innoplexus as one of its "platform companies." *Id.* Since the takeover, Partex has formed and acquired various subsidiaries that now engage in business areas in which Innoplexus was active before the Partex takeover. Partex has also poached key Innoplexus employees.

The takeover of Innoplexus dramatically reduced the value of HCS's holding in Innoplexus. A recent article in the Swiss business magazine Bilanz profiled Mr. Fernandez. "Innoplexus," the article says, was "founded by Indian management consultant Gunjan Bhardwaj, a good friend of Fernandez." Gierke Decl. ¶ 23 & Ex. 1. "'Innoplexus probably has the largest oncology database in the world,' says Fernandez. The company has already registered patents and

signed royalty deals." *Id.* Mr. Fernandez is further quoted in the article as saying the sales potential for Innoplexus "is many billions." *Id.* The article also stated that "The company valuation is already close to that of a unicorn. The exit is planned for 2025." *Id.*

### D. HCS Takes Steps in Preparation for a Lawsuit Against At Least Dr. Bhardwaj and Partex.

Petitioner hired a German law firm in connection with its dispute with Dr. Bhardwaj and Partex. Gierke Decl. ¶ 26. Since then, Petitioner's German lawyers have sent a letter to Dr. Bhardwaj informing him of his obligations under the Shareholder Agreement, including his obligation to devote all of his work time and attention to Innoplexus. *Id.* ¶¶ 5, 27. The letter also requested that Dr. Bhardwaj disclose to HCS "all activities, including the respective periods of time spent on them, which you have performed since signing the Shareholders' Agreement that violate your obligation" to devote all of his time to Innoplexus. *Id.* In response to that letter, Petitioner's German counsel received an email from German legal counsel for Dr. Bhardwaj. *Id.* ¶ 28.

As explained in the declaration of Petitioner's German counsel, Petitioner will, in the Partex Proceeding, bring claims alleging, among other things, that Dr. Bhardwaj and Partex violated the Shareholders' Agreement in the course of January 2023. Gierke Decl. ¶¶ 33–34.

In the Innoplexus Proceeding, Petitioner will file claims in its own name and on behalf of Innoplexus under Sec. 311, 317, 309(4) of the German Stock Corporation Act and in analogy of Sec. 113 (1) of the German Commercial Code, respectively Sec. 148, 93, 117 of the German Stock Corporation Act, in front of the Regional Court of Frankfurt am Main, Germany in the course of January 2023. Gierke Decl. ¶¶ 30–32. The claims will be asserted against Partex and Dr. Gunjan Bhardwaj for causing Innoplexus to enter into disadvantageous transactions and taking disadvantageous measures to the benefit of Partex without granting adequate compensation after

Partex became Innoplexus' controlling entity.

Petitioner intends to file both German Proceedings in the Regional Court of Frankfurt am Main, Germany in the course of January 2023.  Gierke Decl. ¶¶ 31, 33.

### E.    Respondent and The Requested Discovery

Petitioner seeks discovery from Respondent for use in the German Proceedings.  As described above, Respondent appears to have been supporting Dr. Bhardwaj's efforts to takeover Innoplexus and to shift Innoplexus' assets, business opportunities, and know how to Partex and its subsidiaries since January 2021, months before his appointment to the Innoplexus supervisory board.  Respondent became a member of the Innoplexus supervisory board on March 8, 2021.  He ceased to be a member of the supervisory board on February 25, 2022, and was subsequently re-elected to the supervisory board on April 19, 2022.  Since then, Respondent has been a member of the Innoplexus supervisory board.

Respondent is likely to have first-hand knowledge of the central issues in the German Proceedings.   The requested discovery includes, for example: (a) All documents and communication between Respondent, Partex, Dr. Bhardwaj and Mr. Fernandez and any supervisory board members, employees, officers, directors, or agents and advisors of Partex or Innoplexus related to the transfer of assets, business opportunities, and know-how from Innoplexus to Partex and its subsidiaries, (b) documents and communications between Respondent and Dr. Bhardwaj relating to the solicitation of investment from Mr. Fernandez, (c) documents and communications between Respondent and Mr. Fernandez related to the investment in Partex, (d) documents and communications between Respondent and any supervisory board members, employees, officers, directors, or agents and advisors of Partex or Innoplexus related to Partex's takeover of Innoplexus as majority shareholder, (e) documents and communications between Respondent and Dr. Bhardwaj related to HCS's shareholding in Innoplexus, including the

circumstances that led to Innoplexus' forced capital increase and the decision to exclude HCS' subscription right and (f) documents and communications between Respondent and Dr. Bhardwaj relating to the circumstances under which Respondent joined the Partex team was elected to the Innoplexus supervisory board.

As explained in the Gierke Declaration, "these documents will directly facilitate HCS's arguments in the German Proceedings because Respondent has first-hand knowledge of the central issue in those proceedings: the extent to which Dr. Bhardwaj and Partex misappropriated the assets and business opportunities of Innoplexus for his personal benefit and the benefit of Partex." Gierke Decl. ¶ 36.

## **ARGUMENT**

Section 1782 of Title 28 of the United States Code permits U.S. district courts to grant discovery for use in a pending foreign proceeding or a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004). "Three statutory requirements must be satisfied before a district court may grant assistance under § 1782(a): (1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by . . . any interested person." *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 322 (5th Cir. 2015). If these statutory requirements are met, the court then considers four discretionary "*Intel*" factors. *Intel*, 542 U.S. at 264–65. "The bounds of the district court's discretion are informed by the twin aims of the statute, which are to provide efficient means of assistance in our federal courts to participants in international litigation and to encourage foreign countries by example to provide similar means of assistance to our courts." *Bravo Express*, 613 F. App'x at 321–22.

## I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. 1782.

### A.    Respondent "Resides" or Is "Found in" this District.

To satisfy the first statutory requirement, "the inquiry is whether the parties from whom discovery is sought in the § 1782(a) motion . . . reside in the Southern District." *Bravo Express*, 613 F. App'x at 322.   As explained in the accompanying declaration of a licensed investigator, according to the results of searches in proprietary databases, Respondent is listed as a "current resident" of a residential condo in downtown Dallas.   Declaration of Tyler Burtis ("**Burtis Decl.**") ¶ 3.   Respondent also has a phone number associated with that address. *Id.*   The Application therefore satisfies the first statutory requirement. *Bravo Express*, 613 F. App'x at 322.

### B.    The Discovery Sought Is "For Use" In a Foreign Proceeding.

To satisfy the second statutory requirement, the requested discovery must be "for use" in a foreign proceeding. *Intel*, 542 U.S. at 258.   "Although a previous version of § 1782(a) required that the discovery be for use in a 'pending' proceeding, Congress amended the statute to delete the word 'pending.'   Accordingly, the statute only requires the foreign proceeding to be in 'reasonable contemplation.'" *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 322 (5th Cir. 2015).   "[T]he Fifth Circuit [has] held that an applicant had satisfied the 'for use' requirement simply by identifying and describing a foreign proceeding "within reasonable contemplation,' which [does] not entail a showing of relevance or necessity." *In re Empresa Publica De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*, No. 4:19-MC-2534, 2020 WL 13412872, at *4 (S.D. Tex. Apr. 13, 2020).

The Fifth Circuit has interpreted the "reasonable contemplation" standard to mean: "The future proceedings must be more than speculative, and a district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Bravo*, 613 F. App'x at 322.   Courts in this Circuit have generally held that a lawsuit is within reasonable

contemplation when the prospective litigant submits a sworn declaration from counsel describing the nature of the suit, describing concrete steps counsel has taken to prepare that lawsuit, including correspondence with the adverse party or preparation of litigation documents, and stating that the litigation will be filed within the next several months. *Id.* For example, in Bravo, the Firth Circuit held that the petitioner satisfied the "for use" requirement when the petitioner submitted a sworn affidavit from foreign counsel stating that action would be "imminently filed," explained facts giving rise to suit, and explained that the petitioner had already prepared a "claim of particulars" for the anticipated litigation. *Bravo*, 613 F. App'x at 322–23.

Like in *Bravo*, Petitioner has submitted a sworn declaration from its German litigation counsel explaining the facts giving rise to the anticipated suit against Dr. Bhardwaj and Partex. Gierke Decl. As explained in the Gierke Declaration, Petitioner intends to file the German Proceedings in the regional court of Frankfurt am Main, Germany in the course of January 2023. *Id.* ¶¶ 30–34. In addition, Petitioner's counsel has exchanged correspondence with counsel for Dr. Bhardwaj putting Dr. Bhardwaj on notice of Petitioner's allegation that Dr. Bhardwaj violated the terms of the Shareholder Agreement. *Id.* ¶¶ 26–29. These facts are more than sufficient to satisfy the second statutory requirement.[1]

### C. Petitioner is an "Interested Person."

To satisfy the third statutory requirement, Petitioner must be an "interested person." "Litigants are no doubt included among the 'interested persons' who may invoke § 1782." *Banca*

---

[1] *See also, e.g.*, *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1271 (11th Cir. 2014) ("In light of CONECEL's facially legitimate and detailed explanation of its ongoing investigation, its intent to commence a civil action against its former employees, and the valid reasons for CONECEL to obtain the requested discovery under the instant section 1782 application before commencing suit, we can discern no error in the district court's determination that CONECEL's foreign civil proceedings against Egas and Narváez were 'within reasonable contemplation.'").

*Pueyo, S.A. v. Lone Star Fund IX (U.S.), L.P.*, No. 3:18-MC-100-M, 2019 WL 12375546, at *5 (N.D. Tex. Nov. 29, 2019). "Section 1782(a)'s text 'upon the application of any interested person,' plainly reaches beyond the universe of persons designated 'litigant.' To be considered an interested party, 'the complainant must have significant procedural rights." *Id.* (cleaned up). As explained in the declaration of Petitioner's German counsel, Petitioner will be a litigant in the German Proceedings and will have the right to submit evidence in these proceedings. Gierke Decl. ¶¶ 30–34, 49–51. That is sufficient to satisfy the third requirement. *In re Thales Dis Ais Deutschland GmbH*, No. 3:21-MC-303-S, 2021 WL 7707268, at *2 (N.D. Tex. Nov. 5, 2021) ("Petitioner qualifies as an 'interested person' in a 'foreign proceeding' because it is the claimant in the German Litigation.").

All of the statutory elements are thus satisfied here.

## II.    The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery.

Once the statutory threshold requirements of Section 1782 are met, a district court considers, in its discretion, whether to order the requested discovery. To do this, the district court looks to the four "*Intel* factors." *See Intel*, 542 U.S. at 264. Each of the *Intel* factors is discussed below and weighs in favor of granting the Application.

### A.    Respondent Is a Non-Participant in the German Proceedings.

"As to the first discretionary factor, the Supreme Court observed in *Intel* that, 'when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.'" *In re Thales Dis Ais Deutschland GmbH*, No. 3:21-MC-303-S, 2021 WL 7707268, at *2 (N.D. Tex. Nov. 5, 2021) (quoting *Intel*, 542 U.S. at 264). This factor looks to "whether the discovery is outside the foreign

tribunal's jurisdictional reach, and thus unobtainable absent § 1782(a) aid." *Id.* But Section 1782 does not "require an applicant to seek discovery in the foreign jurisdiction before seeking the assistance of a district court." *Id.* As explained by Petitioner's German counsel, as a resident of the United States, Respondent is outside of the reach of the German courts, and thus the evidence requested in the Application is not obtainable in the German Proceedings. Gierke Decl. ¶ 42. Further, "German courts will only request the production of documents that are specifically identified, not categories of documents that are relevant to topics at issue in the litigation." Gierke Decl. ¶ 40. As would be expected, Petitioner has no way of knowing what communications or other specific documents might exist that relate to, for example, Dr. Bhardwaj's scheme to take control of Innoplexus and to strip Innoplexus' assets, including through meetings with Mr. Fernandez, which did not include HCS. Finding those documents is one of the purposes of discovery.

Because Petitioner has demonstrated its "need for § 1782(a) aid," *Intel*, 542 U.S. at 244, the first discretionary factor weighs in its favor. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (reversing denial of Section 1782 application because German litigant could not "obtain even remotely comparable discovery by utilizing German procedures"); *Thales*, 2021 WL 7707268, at *2 ("Petitioner offers evidence that production of documents in German civil lawsuits is limited to documents that can be specifically identified, rather than categories of documents that are relevant to the litigation.").

**B.    The German Court Will Be Receptive to the Evidence Sought.**

The second *Intel* factor requires courts to consider whether the "nature, attitude, and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance. Under the second *Intel* factor, it is Respondent's burden to "provide 'authoritative proof' that a foreign tribunal would reject evidence because of a violation of an alleged foreign privilege." *Ecuadorian*

*Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010).  It is not enough to show "that the discovery sought by [the petitioner] would not be available in [the foreign foreign]" absent a "judicial, executive or legislative declaration that clearly demonstrates that allowing discovery in this case would offend" the "judicial norms" of the foreign court.  *Id.*

No such authoritative proof exists here.  "Petitioner has provided just the opposite: evidence that German courts are often receptive to § 1782 evidence."  *In re Thales Dis Ais Deutschland GmbH*, No. 3:21-MC-303-S, 2021 WL 7707268, at *3 (N.D. Tex. Nov. 5, 2021).  As explained by Petitioner's German counsel, the German court is likely to be receptive to the evidence sought, not reject it.  Gierke Decl. ¶¶ 49–51 ("Evidence collected as a result of HCS's Application will be admissible in the German Proceedings, and German courts routinely allow the admission of evidence obtained pursuant to Sec. 1782.").  The Gierke Declaration is consistent with numerous decisions, including from a court in this District, that have found that German courts are receptive to evidence obtained under Section 1782.  *Thales*, 2021 WL 7707268, at *2 (collecting cases finding that "there exists a substantial amount of case law where courts have found that German commercial courts are an appropriate forum for § 1782 assistance").

## C.     The Application Does Not Circumvent Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  "Regarding the third discretionary factor, nothing suggests that the Petition conceals an attempt to circumvent proof-gathering restrictions or other policies, as evidenced by the likelihood that German courts will accept discovery obtained using § 1782 assistance."  *In re Thales Dis Ais Deutschland GmbH*, No. 3:21-MC-303-S, 2021 WL 7707268, at *3 (N.D. Tex. Nov. 5, 2021).

Petitioner acknowledges a limitation on some otherwise responsive information from

Respondent. The German Stock Corporation Act provides for a statutory confidentiality obligation for the members of the supervisory board, under which Respondent is obliged to maintain secrecy about all confidential information or secrets of the company, in particular regarding business and trade secrets. Gierke Decl. ¶¶ 44–48. But as explained in the Gierke Declaration, this obligation only applies to information that the supervisory board member has obtained as a result of his activities as a member of the supervisory board and does not cover information obtained before or after the election to the board. *Id.* ¶ 47.

Therefore, the following information is not subject to the confidentiality obligation: (a) documents and communication between Respondent, Partex, Dr. Bhardwaj and Mr. Fernandez and any supervisory board members, employees, officers, directors, or agents and advisors of Partex or Innoplexus related to the transfer of assets, business opportunities, and know-how from Innoplexus to Partex and its subsidiaries that pre-date Respondent's appointment as supervisory board member and those between the period of February 26, 2020 to April 19, 2022, (b) documents, communications, and agreements between Respondent and Partex or Dr. Bhardwaj, (c) documents, communications, and agreements related to Respondent's position as member of Partex's team, (d) documents that pre-date Respondent's election to the supervisory board on March 8, 2021, that is, all documents and communications between Respondent and Dr. Bhardwaj leading up to and following the meeting between Dr. Bhardwaj and Mr. Fernandez and Mr. Fernandez's subsequent investment in Partex, and (e) documents and communications between Respondent related to Partex or Innoplexus from the period of February 26, 2022 to April 19, 2022, during which Respondent was not a member of the supervisory board (the "**Non-Confidential Discovery**"). According to Petitioner's German counsel, "There is no limitation under German law on disclosure of the Non-Confidential Discovery in this proceeding." Gierke Decl. ¶ 47.

Notwithstanding the confidentiality obligation, a company's management can authorize the disclosure of confidential information by supervisory board members. Gierke Decl. ¶ 48. Accordingly, if Petitioner is successful in having a special representative appointed for pursuing claims against Dr. Gunjan Bhardwaj and Partex for Innoplexus with respect to , *inter alia*, the fraudulent asset stripping, that special representative may authorize Respondent to disclose information otherwise covered by the confidentiality obligation. To comply with the confidentiality obligation, the Application therefore seeks: (i) immediate production of the Non-Confidential Discovery and, (ii) the production of all other responsive discovery in the event that the special representative is appointed and approves the waiver of the confidentiality obligation as to Respondent.

### D.     The Subpoena Is Not Unduly Burdensome.

The final *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. It is Respondent's "burden to show the requested discovery would be overly broad, burdensome, or oppressive," and Respondent must "demonstrate that compliance with the subpoena would be unreasonable and oppressive." *Banca Pueyo, S.A. v. Lone Star Fund IX (U.S.), L.P.*, No. 3:18-MC-100-M, 2019 WL 12375546, at *3 (N.D. Tex. Nov. 29, 2019). The Proposed Subpoena here is "sufficiently narrowly tailored and not unduly intrusive or burdensome" because the "documents Petitioner seeks are all directly related to the claims asserted in the German litigation. Section 1782 is thus an effective mechanism for obtaining the targeted discovery sought by Petitioner." *In re Thales Dis Ais Deutschland GmbH*, No. 3:21-MC-303-S, 2021 WL 7707268, at *3 (N.D. Tex. Nov. 5, 2021). Petitioner seeks a modest set of documents and deposition testimony relating to Respondent's first-hand knowledge of the issues central to the German Proceedings. The proposed subpoena thus falls well within the bounds of typical third-party discovery, and numerous courts have granted applications for discovery of similar

scope. *See, e.g.*, *LEG Q LLC*, 2017 WL 3780213, at *3–4 (12 categories of documents and depositions, such as "[a]ll documents . . . concerning . . . the Board of Directors" and "[d]ocuments related to . . . each director's financial interests," for use in English derivative shareholder litigation (cleaned up)); *Palantir Techs., Inc.*, 415 F. Supp. 3d 907, 909–10 (N.D. Cal. 2019) (9 categories of documents, including, e.g., "any communication between [Defendant], on the one hand, and [Plaintiff], or any director, officer, or employee of [Plaintiff], on the other, concerning the technology described in the Challenged Patents").

To the extent the Court has any concerns about the relevance, breadth, or burden of these requests, those concerns are addressed most appropriately through proceedings after the subpoena is served, rather than by denying the petition. The parties will also be required to meet and confer before commencing any motion practice, further enhancing the benefits of this course of action. Respondent will be able to raise any burden concerns in a particularized manner at that time, and Petitioner can then further tailor its requests, if necessary and as appropriate. Any dispute that ultimately reaches the Court would then be concrete and based on specific information about the volume of information actually called for by these requests.

## CONCLUSION

Respondent possesses information in the United States that is materially relevant to Petitioner's action in Germany. The Application satisfies all the statutory requirements, and each discretionary factor weighs in favor of granting the petition. Petitioner therefore respectfully requests that the Court (a) grant its Application for an order permitting discovery, (b) authorize Petitioner to serve the subpoena in the form of Exhibit 1 to the declaration of Duane L. Loft pursuant to 28 U.S.C. § 1782, and (c) enter the proposed order filed with this Application.

Dated: December 21, 2022

By:    /s/ John P. Lewis
       _____

       HAYWARD PLLC
       John P. Lewis
       Texas State Bar No. 12294400
       10501 N. Central Expy, Suite 106
       Dallas, Texas 75231
       Telephone: (972) 755-7100
       JPLewis@haywardfirm.com

       PALLAS PARTNERS (US) LLP
       Duane L. Loft*
       Brianna Hills Simopoulos*
       75 Rockefeller Plaza
       New York, NY 10001
       Telephone: (212) 970-2300
       Duane.Loft@pallasllp.com
       Brianna.Simopoulos@pallasllp.com

       *Pro hac vice applications forthcoming

       Counsel for Petitioner

17