**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| HCS BETEILIGUNGSGESELLSCHAFT MBH, | § § § | |
| Plaintiff, | § § § | |
| V. | § § § | CIVIL ACTION NO. 3:22-MC-00101-M |
| | § § § § | |
| RUBEN KING-SHAW, JR, | § § § | |
| Defendant. | § | |

**PROPOSED INTERVENOR PARTEX N.V.'S MEMORANDUM OF LAW
IN OPPOSITION TO APPLICATION PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

104457877_6

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................................... 4

    A.    Innoplexus ................................................................................................................ 4

    B.    HCS ........................................................................................................................... 5

    C.    HCS's War On Dr. Bhardwaj .................................................................................. 5

    D.    The Respondent ....................................................................................................... 6

    E.    The Present Application ........................................................................................... 7

ARGUMENT .................................................................................................................................... 8

    I.    HCS HAS NOT SHOWN THAT THE EVIDENCE IT SEEKS IS "FOR USE IN" A FOREIGN PROCEEDING. ............................................................................. 8

    II.    HCS HAS NOT DEMONSTRATED THAT IT WOULD BE A FAIR EXERCISE OF DISCRETION TO ORDER RELIEF. ................................................................. 11

        A.    Mr. King-Shaw Will Be A Participant In The German Proceedings. ................... 11

        B.    Because Mr. King-Shaw Is Not Likely To Have Responsive Documents Or Information, Requiring Him To Comply With The Proposed Subpoena Would Be Unduly Burdensome And Disproportionate. ...................................................... 12

    III.    IN THE EVENT DISCLOSURE IS GRANTED, THE SUBPOENA SHOULD BE AMENDED TO MAKE IT CLEAR THAT MR. KING-SHAW IS NOT REQUIRED TO PROVIDE DOCUMENTS OR INFORMATION OBTAINED AS A RESULT OF HIS ROLE AS A MEMBER OF THE SUPERVISORY BOARD OF INNOPLEXUS. .......... 13

    IV.    IF THE COURT ALLOWS THE DISCLOSURE SOUGHT BY HCS, IT SHOULD ORDER HCS TO PROVIDE RECIPROCAL DISCLOSURE TO PARTEX. ................. 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*, No. 11 MC 354, 2012 WL 1059916 (S.D.N.Y. Mar. 29, 2012) ................................................................................................ 16

*Bravo Express Corp. v. Total Petrochemicals & Refin. U.S.*, 613 F. App'x 319 (5th Cir. 2015) ............................................................................................................................. 8, 9

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015) ............................................................................................................................. 3, 8

*In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 CIV 1801 NRB, 2014 WL 3404955 (S.D.N.Y. July 9, 2014), *aff'd*, 798 F.3d 113 (2d Cir. 2015). ............................................................................................... 9

*In re Empresa Pública De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*, No. 4:19-MC-2534, 2020 WL 13412872 (S.D. Tex. Apr. 13, 2020) ........................................................................................................................... 3, 8

*Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) ..................................... 14, 15

*Fagan v. J.P. Morgan Chase Bank*, No. SA-19-MC-00111-FB, 2019 WL 984281 (W.D. Tex. Feb. 28, 2019) ........................................................................................................ 8, 10

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ..................................... *passim*

*Leutheusser-Schnarrenberger v. Kogan*, No. 18-MC-80171-JSC, 2018 WL 5095133 (N.D. Cal. Oct. 17, 2018) ................................................................................................... 10

*Mangouras v. Squire Patton Boggs*, 980 F.3d 88 (2d Cir. 2020) .............................................. 9

*In re Porsche Automobil Holding S.E.*, No. 19-MC-166 (RA), 2021 WL 2530277 (S.D.N.Y. June 21, 2021) ...................................................................................... 14, 15, 16

*In re Request for Assistance for Ministry of Legal Affs. of Trin. and Tobago*, 848 F.2d at 1156 ..................................................................................................................................... 10

**Statutes and Rules**

28 U.S.C. § 1782 ................................................................................................................ *passim*

28 U.S.C. § 1782(a) ................................................................................................................ 8, 12

## INTRODUCTION

HCS Beteiligungsgesellschaft mbH ("HCS") is a minority shareholder in a German company called Innoplexus AG ("Innoplexus"). Proposed intervenor Partex N.V. ("Partex") is the majority shareholder of Innoplexus. HCS has applied under 28 U.S.C. § 1782 for permission to serve a subpoena on Mr. Ruben King-Shaw, Jr., a Dallas resident who has served on the supervisory board of Innoplexus since March 2021. HCS states that it needs documents and deposition testimony for use in two proceedings it proposes to bring in Germany against Partex and its principal, Dr. Gunjan Bhardwaj, the founder of Innoplexus. HCS claims that Dr. Gunjan has wrongfully diverted assets and corporate opportunities from Innoplexus to Partex, and has breached the terms of a shareholders' agreement by failing to devote adequate time and attention to the Innoplexus business. HCS states that it intends to bring (1) a shareholder derivative action on behalf of Innoplexus against Dr. Bhardwaj and Partex for the value of assets and opportunities allegedly taken from Innoplexus, and (2) an action against Dr. Bhardwaj personally, for allegedly breaching his obligations under the shareholders' agreement.

As is made clear in the accompanying Declaration of Carsten van de Sande, HCS is a disgruntled minority shareholder that, having failed in an attempt to oust Dr. Bhardwaj and take control of Innoplexus, has been engaged in a relentless campaign to harass Innoplexus's management and obstruct the company's business. HCS's allegations against Dr. Bhardwaj and Partex have been examined at length in Germany, both through a comprehensive independent audit and in several prior court proceedings, and have been found to be completely unsubstantiated and meritless. The present application is simply the latest episode in HCS's campaign of harassment.

That HCS's application has not been brought in good faith is clear when one looks at what HCS supposedly hopes to obtain from Mr. King-Shaw. Significantly, HCS does not ask

that Mr. King-Shaw be required to disclose documents or information gained through his service as a member of the supervisory board of Innoplexus, which has given attention to HCS's accusations on numerous occasions.  HCS and its German lawyer concede that Mr. King-Shaw is prohibited by German corporate confidentiality laws from disclosing such materials and information, and HCS does not ask for such materials and information here.  (ECF 1-4, Mem. at 16; ECF 1-2, Gierke Decl. ¶¶ 44-48.)  Nor, in any event, would HCS need access to supervisory board materials, since it had its own representative on the supervisory board during most of the relevant period.  HCS hypothesizes that Mr. King-Shaw may be in possession of relevant documents or information gained outside his role as a board member of Innoplexus, i.e. (1) in January and February 2021, before he joined the supervisory board, (2) during a one month period in 2022 when his membership on the supervisory board briefly lapsed, and (3) in a purely personal capacity, as a purported member of "Partex's Team."  (ECF 1-4, Mem. at 14.)

But HCS is incorrect in assuming that Mr. King-Shaw has some sort of personal involvement with Dr. Bhardwaj and/or Partex through which he may have obtained documents or information relevant to HCS's purported claims against them.  The declaration filed by Mr. King-Shaw shows that his only knowledge of the subject matter of HCS's grievances against Dr. Bhardwaj and Partex comes via his service on the supervisory board of Innoplexus.  Any responsive documents and information are therefore—by HCS's own admission—protected from disclosure under German corporate confidentiality laws.

HCS also fails to meet one of the threshold requirements under *Intel* for granting Section 1782 relief—showing that the evidence it seeks is for use in a foreign proceeding—because it has not carried its burden of demonstrating that it is in a position to commence either of its two proposed proceedings.  Although Section 1782 can be used to obtain evidence for use in foreign

proceedings not yet commenced, the applicant must demonstrate that commencement is imminent and is more than merely "a twinkle in counsel's eye."[1] The proceedings HCS proposes to bring against Partex and Dr. Bhardwaj would be—in substance if not in form—a repeat of actions it has already brought, that have been dismissed because HCS has been unable to particularize or substantiate its claims. (van de Sande Decl. *passim*.) At best, HCS is conducting a fishing expedition in a last-ditch hope of finding some shred of evidence that might give it a basis to file a claim.

Even if HCS had met the threshold requirements for relief under Section 1782, it has not demonstrated that granting the application would be a just or appropriate exercise of the Court's discretion. Several factors weigh heavily against a grant of relief. Under *Intel*, the fact that the target of discovery in the US will be within the jurisdiction of the foreign court weighs against a grant of discovery. Here, Mr. King-Shaw is the chair of the supervisory board of Innoplexus, which will necessarily be a party to the derivative action HCS proposes to bring on Innoplexus's behalf. Further, Mr. King-Shaw has stated that he will be willing to testify as a witness in the German proceedings. (King-Shaw Decl. ¶ 23.) It would also be unduly burdensome and disproportionate to require Mr. King-Shaw to search for documents and appear for a deposition where, as the record establishes, he is unlikely to have <u>any</u> documents or information responsive to HCS's requests, other than material he is—as HCS concedes—prohibited from disclosing under German corporate confidentiality laws.

---

[1] *In re Empresa Pública De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*, No. 4:19-MC-2534, 2020 WL 13412872, at *3 (S.D. Tex. Apr. 13, 2020) (quoting *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015)).

In the event the Court nevertheless determines that it should grant the application, Partex asks that the order include several provisions needed to ensure fairness: First, the subpoena should be modified to make it clear that Mr. King-Shaw is not required to disclose documents or information gained as a result of his service on the supervisory board of Innoplexus. HCS concedes this limitation in its brief, but has not incorporated it into its proposed subpoena. (ECF 1-1, Loft Decl. Ex. 1.) Second, as invited under *Intel*, the Court should maintain parity between the parties to foreign proceedings by ordering HCS and its principal, Mr. Semmler, to provide reciprocal disclosure with respect to the same subjects as are covered in HCS's proposed subpoena.

## FACTUAL BACKGROUND

The factual background of the present dispute is set forth at length in the Declaration of Carsten van de Sande. The key facts may be summarized as follows:

### A.   Innoplexus

Innoplexus was incorporated in 2016 for the purpose of expanding a startup venture that had been founded earlier by Dr. Gunjan Bhardwaj and a colleague. Innoplexus develops and patents software tools, based on artificial intelligence and machine learning, that can be used to analyze large volumes of information about drugs and medical devices that are undergoing clinical trials. (Declaration of Carsten van de Sande ("van de Sande Decl.") ¶ 3.)

Innoplexus is the brainchild and lifetime achievement of Dr. Bhardwaj, who has held substantial percentages of the company's share capital at all relevant times, either directly or through Partex, a German entity formed for this purpose. Together, Partex and Dr. Bhardwaj currently hold about 81% of the shares in Innoplexus. (*Id.* ¶ 4.)

4

### B. HCS

HCS is a venture capital firm focused primarily on investments in technology companies in Europe and Middle East. HCS is organized as a limited liability company under the laws of Germany, with its business seat in Frankfurt am Main. (ECF 1-2, Declaration of Dr. Olaf Gierke ("Gierke Decl.") ¶ 4.)

HCS is a pure financial investor that invested in Innoplexus in 2016. HCS currently holds about 17% of the share capital and voting rights in Innoplexus. Hans-Christian Semmler is a managing director of HCS. As a company formed under the laws of Germany, Innoplexus has a dual board of director's structure, with separate supervisory and management boards. Until February 2022, Mr. Semmler served on the supervisory board of Innoplexus. (van de Sande Decl. ¶ 6.)

From 2016 until 2019, HCS participated in various rounds of investment in Innoplexus on very favorable terms. During this period, the relationship between HCS and Dr. Bhardwaj was generally positive. Thereafter, the relationship began to deteriorate. (*Id.* ¶ 7.)

### C. HCS's War On Dr. Bhardwaj

The genesis of the disputes of which the present application forms a part appear to date back to January 2021, when Innoplexus was soliciting investments in its Series D funding round. HCS sought to (i) take control of Innoplexus, (ii) oust Dr. Bhadwaj, and (iii) change the focus of Innoplexus's business by bringing in an allied investor whose contribution would have given HCS and the allied investor majority control of the company. This effort failed, when Partex was able to provide alternative funding, on more attractive terms, which result in an increase in Partex's holding in Innoplexus to 73.28%. Instead of taking control of Innoplexus, HCS was left with a minority stake (17%). (*Id.* ¶¶ 8-10.)

5

Since these events, HCS and Mr. Semmler have been engaged in a perpetual campaign of open hostility and obstruction directed towards Dr. Bhardwaj and the other members of the supervisory and management boards of Innoplexus. (*Id.* ¶ 12.)

Starting in February 2022, HCS began making the accusations against Dr. Bhardwaj, Partex, and the boards of Innoplexus that form the basis of the application before this Court, i.e. that (i) Dr. Bhardwaj had transferred assets or business opportunities "worth billions" to Partex and Dr. Bhardwaj, (ii) Dr. Bhardwaj and Partex are wrongly competing with Innoplexus, and (iii) the supervisory and management boards of Innoplexus have breached their duties by either facilitating or failing to prevent such alleged wrongdoing. (*Id.* ¶ 13.)

Over the course of 2022, HCS commenced several proceedings in the German courts based on these accusations. To date, these have all failed due to HCS's inability to substantiate any of its allegations. (*Id.* ¶¶ 15-17, 25-26, 27-32.)

Nor have the boards of Innoplexus failed to investigate the allegations made by HCS and Mr. Semmler. In May 2022, Innoplexus commissioned a reputable independent auditing firm—Alvarez & Marsal—to do a thorough investigation of HCS's assertions. After four months of work, at considerable expense, they issued a report finding no factual basis for HCS's allegations of wrongdoing. (*Id.* ¶¶ 18-24.)

### D. The Respondent

Respondent Ruben King-Shaw, Jr., a Dallas businessman, is an acquaintance of Dr. Bhardwaj who became a member of the supervisory Innoplexus in March 2021. Since April 2022 he has served as Chair of the supervisory board. (Declaration of Ruben King-Shaw, Jr. ("King-Shaw Decl.") ¶¶ 2, 7-8.)

Contrary to HCS's insinuations, Mr. King-Shaw has had no role with Partex and has no knowledge of the subject matter of HCS's accusations against Dr. Bhardwaj other than what he has learned through his role as a member of the supervisory board of Innoplexus. (*Id.* ¶ 9-12.)

### E. The Present Application

HCS filed its Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding (the "Application") on December 21, 2022. (ECF No. 1.) HCS seeks discovery from Mr. King-Shaw for use in two proceedings HCS stated it would bring in during January 2023. (ECF 1-4, Mem. at 1, 2, 6-7, 10.)

In the first proceeding, HCS will purportedly allege that Dr. Bhardwaj and Partex breached a shareholders' agreement to which they are parties by (in the case of Partex) competing with Innoplexus and (in the case of Dr. Bhardwaj) violating the obligation to devote his entire work time and attention to Innoplexus (the "Partex Proceeding"). (*Id.* at 1.)

In the second proceeding—a derivative action to be commenced on behalf of Innoplexus—HCS will purportedly allege that Dr. Bhardwaj orchestrated a takeover of Innoplexus, harming HCS, and, in the course of this alleged takeover, Dr. Bhardwaj, together with Partex, stripped Innoplexus' assets and potential business opportunities and transferred them to Partex (the "Innoplexus Proceeding"). (*Id.*)

HCS asks the court to authorize it to serve a subpoena on Mr. King-Shaw that will require him to appear for a deposition and to produce the following general categories of documents: (i) communications between Mr. King-Shaw, Partex, Dr. Bhardwaj, Partex investor Francisco Fernandez, and any board members employees, officers, directors, or agents and advisors of Partex or Innoplexus related to Partex's business opportunities and transfer of assets; (ii) documents and communications related to Mr. Fernandez's investment in Partex; (iii) documents and communications related to Partex's alleged takeover of Innoplexus as

7

majority shareholder; (iv) documents and communications related to HCS's shareholding in Innoplexus and the Series D financing; and (v) communications between Mr. King-Shaw and Partex or Dr. Bhardwaj related to the circumstances under which Mr. King-Shaw allegedly joined the Partex team and was elected to Innoplexus's Supervisory Board.  (ECF 1-1, Loft Decl. Ex. 1.)

Mr. King-Shaw does not believe he has any documents or information about the relevant subjects, other than what he has received or transmitted in his capacity as a member of the supervisory board of Innoplexus.  (King-Shaw Decl. ¶ 16.)  HCS states that such information is excluded from its discovery requests, conceding that Mr. King-Shaw is prohibited from disclosing such materials under German corporate law.  (ECF 1-4, Mem. at 13-14.)

## ARGUMENT

**I.      HCS HAS NOT SHOWN THAT THE EVIDENCE IT SEEKS IS "FOR USE IN" A FOREIGN PROCEEDING.**

An applicant under Section 1782 bears the burden of demonstrating that the evidence sought is "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). *See Bravo Express Corp. v. Total Petrochemicals & Refin. U.S.*, 613 F. App'x 319, 322 (5th Cir. 2015).  Although the foreign proceeding need not have been commenced before the application is made, the applicant must convince the court that the proposed foreign proceedings are "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).  In other words, the applicant must provide the court with a concrete basis from which it can determine that the contemplated proceeding is more than "just a twinkle in counsel's eye." *In re Empresa PúblicaDe Hidrocarburos Del Ecuador - EP Petroecuador*, 2020 WL 13412872, at *3 (quoting *Certain Funds, Accts. &/or Inv. Vehicles*, 798 F.3d at 113); *see Fagan v. J.P. Morgan Chase Bank*, No. SA-19-MC-00111-FB, 2019 WL 984281, at *2 (W.D. Tex. Feb. 28,

2019) (denying Section 1782 application where the applicant sought discovery in the U.S. in order to ascertain whether there was a basis for potential foreign proceedings) "'The district judge should satisfy himself that a proceeding is very likely to occur. If the judge doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition,' the district court should deny the request.'"[2]

Here, there is considerable reason to doubt that HCS actually intends to bring the "German Proceedings," or that it would be in a position to do so. Although a detailed affidavit from foreign counsel confirming that they are prepared to file the foreign case can indeed provide sufficient support for Section 1782 relief, *see Bravo Express Corp.*, 613 Fed. App'x at 323, HCS's submissions fall short of making the required showing. Mr. Gierke's declaration does not "lay out, in great detail, the facts that give rise to the prospective lawsuit[s]." *Id.* HCS has not set forth any factual detail whatsoever, in Mr. Gierke's declaration or otherwise, to support its claims that Dr. Bhardwaj and Partex "misappropriated assets and business opportunities of Innoplexus" (Gierke ¶ 36) other than conclusory references to "various asset

---

[2]  *In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 CIV 1801 NRB, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014) (quoting *In re Request for Assistance for Ministry of Legal Affs. of Trin. & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988) (*abrogated on other grounds by Intel Corp.*, 542 U.S. 241)), *aff'd*, 798 F.3d 113 (2d Cir. 2015).

*See also Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101-02 (2d Cir. 2020) (Section 1782 application should not be granted where the applicant's potential claims "were at best speculative," and whether he would actually bring action would depend upon what was learned through the discovery being sought); *In re Certain Funds, Accts.*, 2014 WL 3404955, at *6 ("Courts must embrace Congress's desire that broad discovery be available for parties involved in international litigation while also guarding against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse. The latter situation is not an appropriate one for a court to compel discovery.").

stripping transactions" (ECF 1-4, Mem. at 8.) and unparticularized assertions that Dr. Bhardwaj and Partex "caus[ed] Innoplexus to enter into disadvantageous transactions" (*Id.* at 9.)

The fact that HCS does not possess sufficient factual evidence to permit it to commence a claim is confirmed by the fact that prior proceedings it has brought in Germany have been dismissed for failure to substantiate HCS's accusations. (van de Sande Decl. ¶¶ 16-17, 26.)

The Court should not permit HCS to utilize the powers offered under Section 1782 in hopes that it might possibly obtain information that might possibly aid a hypothetical lawsuit (or two) in Germany at some point in the future. "To do so would be to countenance the very kind of "fishing expedition" district courts are counseled to guard against." *Fagan*, 2019 WL 984281, at *2 (citing *In re Request for Assistance for Ministry of Legal Affs. of Trin. and Tobago*, 848 F.2d at 1156); *see also Leutheusser-Schnarrenberger v. Kogan*, No. 18-MC-80171-JSC, 2018 WL 5095133, at *4 (N.D. Cal. Oct. 17, 2018) ("Courts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it.").

Furthermore, the proposed proceedings would suffer from serious legal defects. The proposed "Innoplexus Proceeding" would be in substance a re-play of the action it brought last year, which was dismissed for lack of substantiation of the allegations. (van de Sande Decl. ¶¶ 36-38.) Nor is it likely that HCS would be able to make the showing required to obtain permission for it, as a minority shareholder of Innoplexus, to proceed by way of a derivative action on Innoplexus's behalf. (*Id.* ¶¶ 44-45.)

Nor is HCS seeking in good faith to obtain documents or information that could be used in its proposed action it refers to as the Partex Proceeding. HCS states that it intends to assert claims for alleged violations of Sections 20.1, 20.2 and 20.7 of the shareholders' agreement to which HCS, Partex and Dr. Bhardwaj are parties (the "Shareholders' Agreement"). (ECF 1-2,

Gierke Decl. ¶ 34.) Sections 20.2 and 20.7 of the Shareholders' Agreement provide for a non-compete obligation of, *inter alia*, Partex.  Section 20.1 of the Shareholders' Agreement requires Dr. Gunjan Bhardwaj to devote his entire business time to Innoplexus.  (van de Sande Decl. ¶ 46.)

As Mr. Gierke's declaration concedes, claims based on an alleged breach of a non-compete obligation were part of one of HCS's earlier actions in Germany, in which the court's confirmed that HCS was unable to plead sufficiently specific facts to demonstrate that Partex breached a non-compete obligation.  As regards Section 20.1 of the Shareholders' Agreement, HCS's claims are based on Dr. Bhardwaj's activities as a member of the board of Partex.  Partex and Dr. Bhardwaj do not dispute that Dr. Gunjan Bhardwaj is (and was during most of his term as a member of Innoplexus' management board) a member of the Partex board.  The parties' dispute is therefore around the validity and interpretation of Section 20.1 of the Shareholders' Agreement.  As this is a purely legal question, there does not appear to be a need for discovery with respect to HCS's purported claim under Section 20.1 of the Shareholder Agreement.  It is, therefore, not surprising that none of the evidence sought by HCS in Schedule A of its proposed subpoena relates to a purported breach by Dr. Bhardwaj of Section 20.1 of the Shareholders' Agreement.  (van de Sande Decl. ¶ 47.)

Indeed, HCS promised to bring the German Proceedings in January 2023, but has to date failed to do so.  This is likely because it recognizes that, as shown in the prior German proceedings, it does not have sufficient legal grounds or factual evidence to support valid claims and realizes that to commence further proceedings would be a pointless exercise.

II.   **HCS HAS NOT DEMONSTRATED THAT IT WOULD BE A FAIR EXERCISE OF DISCRETION TO ORDER RELIEF.**

   A.   **Mr. King-Shaw Will Be A Participant In The German Proceedings.**

Among the non-exclusive list of discretionary factors to be considered under *Intel* is whether "the person from whom discovery is sought is a participant in the foreign proceeding" *Intel*, 542 U.S. at 264-65.  The Supreme Court has counseled against allowing Section 1782 to be used to gather evidence that would be within the power of the foreign court to obtain:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . .  In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Id.* at 264 (citations omitted).

Mr. King-Shaw is the chair of the supervisory board of Innoplexus, which will necessarily be a party to the derivative action HCS proposes to bring on Innoplexus's behalf. (van de Sande Decl. ¶ 37.)  The German courts plainly have the power to require Mr. King-Shaw to provide documents and to call him as a witness. (*Id.* ¶¶ 48-59.)  Indeed, Mr. King-Shaw has stated that he is willing to testify as a witness in the German proceedings.  (King-Shaw Decl. ¶ 23.)  This factor therefore weighs heavily against allowing the requested discovery.

    **B.**    **Because Mr. King-Shaw Is Not Likely To Have Responsive Documents Or Information, Requiring Him To Comply With The Proposed Subpoena Would Be Unduly Burdensome And Disproportionate.**

Another of the discretionary factors to be considered under *Intel* is whether compliance with the discovery request would be "unduly intrusive or burdensome."  542 U.S. at 264-65.

As set forth in his declaration, Mr. King-Shaw is a busy executive coping with serious health issues.  He had no involvement in, and appears to have no knowledge of, the subject matter of HCS's proposed actions other than what he has gained as a result of his role as a member of Innoplexus's supervisory board, which HCS has expressly excluded from the

12

requested disclosure.  The confidentiality restrictions under German corporate law are very broad, applying not only to information obtained at actual board meetings but also to information about corporate matters that a board member obtained from other sources, even before he became a board member.  (van de Sande Decl. ¶ 62.)  Thus, assessing whether Mr. King-Shaw has any relevant knowledge gained outside the restrictions imposed by German law will therefore be a fraught and arduous exercise, necessitating a close review and consultation about virtually every question likely to be asked at a deposition.  (*Id.* ¶¶ 60-64.)  Under these circumstances, requiring Mr. King-Shaw to search for documents and sit for a deposition would be unduly burdensome, unreasonable and disproportionate.

**III.    IN THE EVENT DISCLOSURE IS GRANTED, THE SUBPOENA SHOULD BE AMENDED TO MAKE IT CLEAR THAT MR. KING-SHAW IS NOT REQUIRED TO PROVIDE DOCUMENTS OR INFORMATION OBTAINED AS A RESULT OF HIS ROLE AS A MEMBER OF THE SUPERVISORY BOARD OF INNOPLEXUS.**

HCS acknowledges that German corporate law imposes a statutory confidentiality obligation on members of the supervisory board of a German company.  (ECF 1-4, Mem. at 17; ECF 1-2, Gierke Decl. ¶¶ 44-48.)  HCS therefore states that it is not seeking disclosure of documents or information Mr. King-Shaw obtained "as a result of his activities as a member of the [Innoplexus] supervisory board." (ECF 1-4, Mem. at 17.)  However, Schedule A to HCS's proposed subpoena does not exclude such material from the scope of what Mr. King-Shaw would be required to produce.  (ECF 1-1, Loft. Decl. Ex. 1.)  If the Court grants HCS's application, it should therefore order that Schedule A be amended to incorporate the above limitation, and should confirm that Mr. King-Shaw is not required to testify with respect to matters known to him as a result of his service as a member of the supervisory board of Innoplexus.

**IV.    IF THE COURT ALLOWS THE DISCLOSURE SOUGHT BY HCS, IT SHOULD ORDER HCS TO PROVIDE RECIPROCAL DISCLOSURE TO PARTEX.**

13

In *Intel*, the Supreme Court noted that, when considering whether to order relief under Section 1782, it is appropriate for a U.S. court to be concerned about maintaining "parity" between parties to a foreign proceeding. 542 U.S. at 261. Where, as here, the procedures in the foreign court provide limited pre-trial disclosure, granting discovery to one party can obviously upset this balance. The Supreme Court therefore noted that it may be appropriate for a district court to "condition relief upon [the applicant's] reciprocal exchange of information." *Id.* at 262 (citing *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995)).

It does not appear that courts in this Circuit have had much opportunity to consider the types of circumstances under which it is appropriate to follow the Supreme Court's suggestion by ordering a Section 1782 applicant to provide reciprocal discovery to its adversary in foreign proceedings. As with other issues under Section 1782, the courts in the Second Circuit have been most active in this area. The decision in *In re Porsche Automobil Holding S.E.*, No. 19-MC-166 (RA), 2021 WL 2530277 (S.D.N.Y. June 21, 2021), in which HCS's counsel in the present case argued in favor of reciprocal discovery to maintain parity in proceedings pending in Germany, provides an instructive survey of decisions in this area.

Noting that the considerations bearing on whether to order reciprocal discovery are not the same as those affecting the initial decision whether to grant discovery under Section 1782,[3] the *Porsche* court observed that the following factors are generally seen as relevant in determining whether to grant reciprocal discovery: "(1) how closely the reciprocal discovery sought relates to the materials requested in the initial Section 1782 application; (2) whether the respondent would be unable to initiate its own independent Section 1782 application against the initial applicant; (3) the location of the evidence sought and whether the respondent would be

---

[3] 2021 WL 2530277, at *5.

104457877_6

able to obtain the material from the applicant in the foreign litigation; (4) the degree to which the respondent 'has a substantial interest' in the foreign litigation; and (5) the timing of the request for reciprocal discovery." 2021 WL 2530277, at *3 (citations omitted).

Most of these factors weigh 100% in favor of granting reciprocal discovery here. The discovery sought by Partex mirrors that sought by HCS. Indeed, Partex has adopted Schedule A to HCS's proposed subpoena and has only amended to the extent necessary to direct it to HCS instead of Mr. King-Shaw. (Adler Decl. Ex. 1.) For Mr. Semmler's convenience, his deposition will be noticed to take place at a law office believed to be convenient to his residence. Partex wishes to prepare to defend itself in the threatened German proceedings by discovering what evidence HCS possesses that may support or undermine the claims it proposes to bring. (van de Sande Decl. ¶ 64.) Meanwhile Partex would not be able to initiate its own Section 1782 application because HCS is not present in the Northern District of Texas. Partex plainly has a "substantial interest" in obtaining discovery for use in a lawsuit HCS is threatening to bring against it. And there is no issue with the timing of Partex's request for reciprocal discovery, which is being made as part of the initial briefing on the Section 1782 application.[4]

The only factor that might be considered to weigh against a grant of reciprocal discovery is the fact that the documents sought are presumably held in Germany, which is also where the proposed deponent—Mr. Semmler—resides. But it is quite common that reciprocal discovery in Section 1782 proceedings will be sought from a party located abroad, and the courts do not consider this a bar to granting discovery. *See, e.g., Euromepa*, 51 F.3d at 1102 (considering a

---

[4] In *Porsche*, where reciprocal discovery was denied in large part because the foreign adversary waited ten months before applying for it, the court noted that the optimal time to ask for reciprocal discovery is in the briefing on the initial application under Section 1782. 2021 WL 2530277, at *5-6.

reciprocal discovery arrangement in which the respondent would gain access to "documents or testimony in Europe"); *Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*, No. 11 MC 354, 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012) (granting reciprocal discovery from applicant located in Peru).

In *Porsche* the court carefully weighed the fact that reciprocal discovery was sought from a party to proceedings pending in Germany, and ultimately declined to order such discovery, but in the context of a fact scenario quite different from the one presented here. Inasmuch as the foreign adversary had waited 10 months before requesting discovery, the timing factor weighed heavily against granting discovery. 2021 WL 2530277, at *5. In addition, the fact that the party seeking reciprocal disclosure had made efforts to get the same disclosure through the German courts, but had been rebuffed, made the court reluctant to grant relief, because granting the requested discovery could possibly be seen as circumventing foreign proof gathering restrictions. 2021 WL 2530277, at *7. Such factors are not present here, and granting reciprocal discovery would be an appropriate exercise of discretion to maintain parity between HCS and Partex in the proceedings HCS threatens to commence in Germany.

Respectfully submitted,


 /s/ Elizabeth Raines
Elizabeth Raines
Texas Bar No. 24027642

THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8267
Facsimile: (214) 871-8209
E-Mail: eraines@thompsoncoe.com


Derek J.T. Adler
New York Bar No. 2250975
(Pro Hac Admission Pending)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6086
Facsimile: (212) 422-4726
E-Mail: derek.adler@hugheshubbard.com

**ATTORNEYS FOR PARTEX N.V.**